UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARNELL ARTIS,

    Plaintiff,

v.

LOCKHEED MARTIN CORPORATION
and SIKORSKY AIRCRAFT CORPORATION,

    Defendants.

Civil Action No. 26-cv-370

# COMPLAINT

## NATURE OF THE ACTION

1. This is an action for damages and equitable relief arising from Defendants' unlawful discrimination against Plaintiff on the basis of his race (Black/African American), color, age (born January 20, 1956), and physical disability (back injury requiring use of a mobility aid), and retaliation against Plaintiff for opposing discriminatory practices and filing charges of discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"); 42 U.S.C. § 1981 ("Section 1981"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et seq.* ("CFEPA").

2. Mr. Artis is a longtime, high-performing Black employee who has worked at Defendants' Stratford, Connecticut manufacturing facility for approximately seventeen years as a Quality Control Inspector. He is disabled, having suffered a back injury that requires him to use a cane or walker to ambulate. He was born on January 20, 1956, and is currently 70 years old.

3. Throughout his employment, and with escalating severity after Lockheed Martin acquired Sikorsky, Mr. Artis has been subjected to a pervasive and ongoing pattern of racial harassment, disability-based harassment, age discrimination, and retaliation. Among other things, a co-worker called Mr. Artis the "n-word" on the factory floor; that same co-worker seized Mr. Artis's cane and mocked his disability by pretending to play golf with it; Defendants failed to promptly remove the harasser from Mr. Artis's work area and then returned the harasser to close proximity with Mr. Artis; and Defendants subjected Mr. Artis to escalating acts of retaliation after he complained about discrimination and filed charges with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the U.S. Equal Employment Opportunity Commission ("EEOC").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in this District, Defendants transact business in this District, and Plaintiff resides in this District.

6. On or about May 10, 2024, Plaintiff filed a complaint of discrimination with the CHRO, which was dual-filed with the EEOC (CHRO No. 2430662; EEOC No. 16A-2024-01216). On or about October 18, 2024, Plaintiff filed an Amended Complaint with the CHRO adding claims of retaliation. On or about December 12, 2025, the CHRO issued a Release of Jurisdiction authorizing Plaintiff to commence a civil action in accordance with Conn. Gen. Stat. § 46a-100.

This action is timely filed within ninety (90) days of Plaintiff's receipt of the Release of Jurisdiction. Plaintiff has satisfied all conditions precedent to bringing this action.

7. Plaintiff's claims under 42 U.S.C. § 1981 are not subject to administrative exhaustion requirements and are independently actionable.

## PARTIES

8. Plaintiff Carnell Artis is a natural person, a citizen of the State of Connecticut, and a resident of West Haven, Connecticut. Mr. Artis is Black/African American, was born on January 20, 1956, and is disabled due to a back injury that requires him to use a cane or walker.

9. Defendant Lockheed Martin Corporation ("Lockheed Martin") is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 6801 Rockledge Drive, Bethesda, Maryland 20817. Lockheed Martin is an "employer" within the meaning of Title VII, the ADA, the ADEA, and the CFEPA. Lockheed Martin acquired Sikorsky Aircraft Corporation and is the ultimate parent company that controls the employment policies, practices, and conditions at the Stratford, Connecticut facility where Plaintiff works. Lockheed Martin's corporate-level policies—including CPS-003 (Nondiscrimination and Equal Employment Opportunity) and CPS-564 (Harassment-Free Workplace)—purport to govern employment conditions at the facility. Lockheed Martin is liable as Plaintiff's employer, joint employer, and/or as an integrated enterprise with Sikorsky Aircraft Corporation.

10. Defendant Sikorsky Aircraft Corporation ("Sikorsky") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6900 Main Street, Stratford, Connecticut 06614. Sikorsky is a wholly-owned subsidiary of Lockheed Martin and is an "employer" within the meaning of Title VII, the ADA, the ADEA, and the

CFEPA. Sikorsky directly employs Plaintiff and has more than 100 employees at its Stratford, Connecticut facility.

## STATEMENT OF FACTS

### A. Plaintiff's Employment Background

11. Plaintiff was initially hired by Sikorsky in or about 1987 and worked until approximately 1988. He was rehired on or about August 13, 2007. He has worked continuously at the Stratford facility since that time—a period of approximately seventeen years.

12. In approximately 2010–2011, Lockheed Martin acquired the company. Since that time, Plaintiff has worked under Lockheed Martin's ownership and policies.

13. Plaintiff holds the position of Inspector Parts & Layout (Job Code 5009, Grade 09) in the Quality Control department. His role involves planning and performing complex inspections of production, composite, and welded parts and assemblies. The position requires specialized knowledge of advanced mathematics, inspection methods, machining processes, and the use of precision measuring instruments. He is also responsible for maintaining certifications including for Tap Test, Flight Safety Parts, Conductivity, and Torque.

14. Throughout his employment, Plaintiff has performed his job in a satisfactory manner, with positive work evaluations. He has never had any performance-related disciplinary action taken against him. Defendants' own Answer to the CHRO Complaint does not deny these facts, instead leaving Plaintiff "to his proof."

15. Plaintiff's attendance has been exemplary. Indeed, he has qualified for and received "Perfect Attendance" bonuses, as documented in Defendants' own wage records.

### *B. Plaintiff's Disability and Defendants' Discriminatory Conduct Related Thereto*

16.     Plaintiff has a back injury that constitutes a disability within the meaning of the ADA and CFEPA. He requires the use of a cane or walker to ambulate. His back condition substantially limits one or more major life activities, including walking and standing.

17.     Despite his disability, Plaintiff has at all relevant times been qualified to perform the essential functions of his position, with or without reasonable accommodation. Indeed, he has done so successfully for approximately seventeen years.

18.     Remarkably, in their Answer to the CHRO Complaint, Defendants *denied* that Plaintiff is disabled, despite his well-documented use of a cane and walker on the factory floor—facts that are visible to any observer and well-known to Defendants' management. This denial is indicative of Defendants' disregard for Plaintiff's disability and their willingness to make bad-faith litigation positions.

19.     In 2021, Plaintiff underwent back surgery. When he returned to work, his security card was restricted, preventing him from accessing the tool shed to retrieve his own tools. This restriction made it impossible for Plaintiff to perform his job efficiently—and at times made it impossible for him to perform his job at all. The restriction was not imposed on similarly situated non-disabled employees. Defendants did not deny this allegation in their CHRO Answer.

20.     Plaintiff requested a reasonable accommodation—specifically, permission to bring a motorized scooter into the factory to assist with mobility—from his supervisor. The supervisor initially approved the request. However, when Plaintiff returned to complete the paperwork, the supervisor reversed his approval without explanation. Defendants' CHRO Answer did not deny this allegation. Despite this, in their Schedule A Response, Defendants falsely claimed that

"Complainant did not request a reasonable accommodation for his alleged medical condition." This statement is contradicted by the record.

21. For the last two to three years before filing his CHRO Complaint, despite Plaintiff providing medical documentation confirming his hearing was adequate, Defendants treated Plaintiff as though he could not hear and used this pretext to limit his job responsibilities. Defendants' own records reveal that Plaintiff failed Tap Test hearing certification examinations on September 30, 2024 and November 20, 2024—notably, both dates fall after Plaintiff filed his CHRO Complaint on May 10, 2024, raising a strong inference that the testing process was administered in a discriminatory or retaliatory manner.

### *C. Racial Harassment and Hostile Work Environment*

22. On or about November 6, 2023, a co-worker called Plaintiff the "n-word" on the factory floor. This is one of the most degrading and offensive racial slurs in the English language. Defendants' Answer did not deny that this incident occurred.

23. During the same incident or time period, the same co-worker seized Plaintiff's cane and made gestures as though playing golf with it, mocking both Plaintiff's race and his disability. Defendants' Answer did not deny this allegation.

24. After Plaintiff reported the racial slur and disability mocking, the co-worker was not immediately removed from Plaintiff's work area. Plaintiff was forced to continue working in close proximity with the harasser for approximately one week. This failure to act was harmful, humiliating, and constituted deliberate indifference to known harassment.

25. During this time, Plaintiff suffered severe emotional and physical distress.

26. After approximately two weeks of separation, Defendants returned the harassing co-worker to a position near Plaintiff's work area. The co-worker engaged in intimidating

behavior, including staring and leering at Plaintiff throughout the workday, causing further distress. Defendants' Answer denies these allegations, but the close temporal proximity and Defendants' failure to deny the underlying n-word incident suggests the co-worker's placement near Plaintiff was at minimum negligent and at worst intentional.

27. Over the years at the Stratford factory, there have been persistent issues with racial discrimination that Plaintiff has raised with his union and management. A pattern of discrimination existed well before the November 2023 incident. Approximately five years before filing the CHRO Complaint, a supervisor was terminated after he was found to have been discriminating against Plaintiff and other employees in the distribution of overtime.

28. As a Black, older, disabled employee, Plaintiff was systematically excluded from operating certain machines for which he was qualified. He was also denied equal access to services and teams. These restrictions were not applied to similarly situated non-Black, younger, and non-disabled employees.

### D. Retaliation for Protected Activity

29. Plaintiff engaged in protected activity by, among other things: (a) internally reporting the November 6, 2023 racial slur and other acts of discrimination to management and his union; (b) filing a charge of discrimination with the CHRO and EEOC on May 10, 2024; and (c) filing an Amended Complaint with the CHRO on October 18, 2024.

30. Following his internal complaints, Plaintiff experienced the following retaliatory actions, among others:

(a) Plaintiff was disconnected from a printer necessary to perform his job duties, which require the use of a printer. After union intervention, the printer access was restored, only for Plaintiff to be disconnected again approximately one week later;

(b) Plaintiff was denied training in a new procedure for photographing parts being inspected, which resulted in him being unable to independently complete his work and forced to rely on colleagues for assistance;

(c) Plaintiff's paychecks frequently reflected only 38 or 39 hours of pay despite consistently working 40-hour weeks and never being late. Plaintiff believes he was the only employee experiencing this discrepancy;

(d) Defendants attempted to strip Plaintiff of his Perfect Attendance award for the first quarter of 2024 based on a coding error related to a doctor's note from February 15, 2024. When Plaintiff wanted to use vacation time rather than a sick day, the supervisor (Lauren) incorrectly coded the absence as disqualifying. It required union intervention by steward Carlos Ayala and HR Business Partner Samantha Cilenti to correct the error. Defendants' own email records from April 24–25, 2024 confirm this sequence of events;

(e) The day after Plaintiff's Perfect Attendance was restored, his supervisor directed that Plaintiff be "shaken down" upon leaving the facility. A security guard searched Plaintiff's backpack and personal belongings, ostensibly in response to a theft complaint. The temporal proximity between the restoration of Plaintiff's attendance award and the search raises a strong inference of retaliation;

(f) Plaintiff was denied the previously approved reasonable accommodation of a motorized scooter, as described above.

31. Following the filing of the CHRO Complaint on May 10, 2024, retaliation intensified. Plaintiff's supervisor Laura (a non-Black woman) subjected Plaintiff to heightened scrutiny and harassment, including but not limited to:

(a) Monitoring Plaintiff more closely than similarly situated non-Black and younger colleagues;

(b) Checking Plaintiff's work more harshly than other employees;

(c) Mocking Plaintiff's disability by telling him to "keep your shoes on" in reference to his gait, which is affected by his use of a cane;

(d) Refusing to credit Plaintiff's professional judgment—for example, when Plaintiff identified a defective part, Laura refused to believe him until engineers independently confirmed his observation;

(e) Making unnecessary and pretextual comments, including about checking for Plaintiff's safety glasses—glasses that Plaintiff has worn for decades at the factory;

(f) Finding reasons to harass and nitpick Plaintiff throughout the workday;

(g) Cutting Plaintiff's overtime following the filing of the CHRO Complaint. The Collective Bargaining Agreement requires overtime to be distributed equally to the extent practicable, and the reduction in Plaintiff's overtime following his protected activity raises a strong inference of retaliation.

32.     Defendants' own Tap Test records reveal that Plaintiff failed hearing certification tests on September 30, 2024 and November 20, 2024. Both of these test dates fall after the filing of the CHRO Complaint on May 10, 2024. Given Plaintiff's longstanding contention that Defendants have improperly used hearing-related pretexts to limit his duties, and given the temporal proximity of these test failures to his protected activity, a reasonable inference arises that the testing was administered, scored, or applied in a retaliatory manner, or that Defendants created conditions (such as excessive noise exposure or inadequate testing protocols) designed to produce a failing result.

### *E. Pattern, Practice, and Indifference*

33. Defendants maintained facially adequate nondiscrimination and anti-harassment policies (CPS-003 and CPS-564), but failed to enforce them in any meaningful way with respect to Plaintiff. The existence of these policies, combined with Defendants' failure to follow them, demonstrates that Defendants were aware of their obligations but deliberately chose to disregard them.

34. Defendants' failure to promptly remove the co-worker who used a racial slur against Plaintiff, their decision to return the harasser to proximity with Plaintiff, their failure to investigate or remediate the pattern of harassment, and their retaliatory conduct following Plaintiff's complaints all evidence malice or reckless indifference to Plaintiff's federally protected rights.

35. On information and belief, Plaintiff's union steward Kenny Moffitt witnessed the racial, disability, and age discrimination that Plaintiff endured and can testify to the same.

## CAUSES OF ACTION

### COUNT I
### Race and Color Discrimination – Hostile Work Environment
### (Title VII, 42 U.S.C. § 2000e-2)

1-35. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 35 as though fully set forth herein.

36. Defendants subjected Plaintiff to a hostile work environment based on his race and color in violation of Title VII. The harassment included, but was not limited to, being called the "n-word" by a co-worker; having his cane seized and used mockingly; being forced to continue working near his harasser; being denied equal access to machines and work duties; being subjected to heightened scrutiny; and being subjected to a pervasive pattern of race-based mistreatment.

37. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

38. Defendants knew or should have known of the harassment and failed to take prompt and effective remedial action.

39. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of income, loss of employment benefits, and other compensatory damages.

## COUNT II
### Retaliation (Title VII, 42 U.S.C. § 2000e-3)

40. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 39 as though fully set forth herein.

41. Plaintiff engaged in protected activity under Title VII by opposing discrimination, reporting harassment, and filing charges with the CHRO and EEOC.

42. Defendants took materially adverse employment actions against Plaintiff, including but not limited to: heightened scrutiny of his work; denial of training; disconnection from necessary work equipment; reduction in overtime; interference with his pay; a targeted security search; denial of reasonable accommodation; and subjecting him to hearing certification testing administered in a potentially discriminatory manner.

43. There is a causal connection between Plaintiff's protected activity and the adverse actions, as demonstrated by the temporal proximity between Plaintiff's complaints and the retaliatory conduct, and by the escalating pattern of adverse treatment.

44. As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

## COUNT III
## Race Discrimination (42 U.S.C. § 1981)

1-44.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 44 as though fully set forth herein.

45.   Section 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens, including the right to the full and equal benefit of all laws and proceedings.

46.   Defendants intentionally discriminated against Plaintiff on the basis of his race by subjecting him to a racially hostile work environment, treating him less favorably than similarly situated non-Black employees, denying him equal access to work assignments and equipment, and otherwise impairing the terms and conditions of his employment.

47.   Defendants' conduct was intentional and motivated by racial animus and/or reckless indifference to Plaintiff's rights. Plaintiff is entitled to compensatory and punitive damages under Section 1981.

## COUNT IV
## Retaliation (42 U.S.C. § 1981)

1-47.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 47 as though fully set forth herein.

48.   Defendants retaliated against Plaintiff for opposing racial discrimination in violation of Section 1981, as more fully described above.

49.   Defendants' retaliation was intentional and willful. Plaintiff is entitled to compensatory and punitive damages.

## COUNT V
### Disability Discrimination – Hostile Work Environment
### (ADA, 42 U.S.C. § 12112)

1-49. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 49 as though fully set forth herein.

50. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

51. Defendants subjected Plaintiff to harassment and discrimination because of his disability, including: mocking his gait and use of a cane; seizing his cane for purposes of ridicule; restricting his security card access after back surgery; using hearing-related pretexts to limit his job duties; telling him to "keep your shoes on" in reference to his disability-affected gait; and denying him reasonable accommodation.

52. The disability-based harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

53. As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

## COUNT VI
### Failure to Accommodate (ADA, 42 U.S.C. § 12112)

1-53. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 53 as though fully set forth herein.

54. Plaintiff requested a reasonable accommodation—specifically, use of a motorized scooter in the factory—from his supervisor. The supervisor initially approved the request but subsequently reversed his decision without legitimate justification.

55. Defendants failed to engage in the required interactive process to determine an appropriate reasonable accommodation for Plaintiff's disability.

56. Defendants' failure to provide a reasonable accommodation violated the ADA.

## COUNT VII
### Retaliation (ADA, 42 U.S.C. § 12203)

1-56.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 56 as though fully set forth herein.

57.   Defendants retaliated against Plaintiff for requesting a reasonable accommodation and for opposing disability-based discrimination, in violation of the ADA, as more fully described above.

## COUNT VIII
### Age Discrimination (ADEA, 29 U.S.C. § 623)

1-57.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 57 as though fully set forth herein.

58.   Plaintiff was at all relevant times over the age of 40 and is a member of the protected class under the ADEA.

59.   Defendants discriminated against Plaintiff on the basis of his age by subjecting him to less favorable terms and conditions of employment than similarly situated younger employees, including but not limited to denial of training, denial of equal work assignments, heightened scrutiny, and reduction in overtime opportunities.

60.   Plaintiff's age was a "but-for" cause of the adverse treatment he experienced.

61.   As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

## COUNT IX
### Disability Discrimination (Section 504 of the Rehabilitation Act)

1-61.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 61 as though fully set forth herein.

62. On information and belief, Defendants receive federal financial assistance and/or are federal contractors, making Section 504 of the Rehabilitation Act applicable. Lockheed Martin is one of the largest federal defense contractors in the United States.

63. Defendants discriminated against Plaintiff solely by reason of his disability, in violation of Section 504.

## COUNT X
### Discrimination in Violation of the Connecticut Fair Employment Practices Act
### (Conn. Gen. Stat. §§ 46a-60(b)(1) and (b)(4))

1-63. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 63 as though fully set forth herein.

64. Defendants discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race, color, age, and physical disability, and retaliated against him for opposing discriminatory practices, in violation of the CFEPA.

65. Plaintiff has exhausted his administrative remedies under the CFEPA. The CHRO released jurisdiction over this matter on December 12, 2025, and this action is timely filed.

66. Plaintiff is entitled to compensatory damages, including emotional distress damages, punitive damages, back pay, front pay, attorney's fees, costs, and such other relief as the Court deems just and proper under the CFEPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Carnell Artis respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

a. A declaratory judgment that Defendants' conduct violated Title VII, the ADA, the ADEA, Section 1981, Section 504 of the Rehabilitation Act, and the CFEPA;

b. A permanent injunction enjoining Defendants from engaging in further discriminatory and retaliatory conduct;

c. Compensatory damages in an amount to be determined at trial, including but not limited to damages for lost wages, lost overtime, lost benefits, emotional distress, pain and suffering, and humiliation;

d. Back pay and front pay, with prejudgment interest;

e. Punitive damages in an amount to be determined at trial;

f. Reasonable attorney's fees, expert fees, and costs of suit;

g. Such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**THE PLAINTIFF**

By: _____

Alexander T. Taubes, Esq.
470 James Street, Suite 007
New Haven, CT 06513
Tel: (203) 909-0048
Email: alextt@gmail.com

Dated: _____, 2026